UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALBERT ELDRIDGE,

                         Plaintiff,

                                                    1:16-CV-1281
v.                                                  (GTS/CFH)

JEFFREY HOFSTETTER, Columbia County Deputy
Sheriff; and JERALD ROWELL, Columbia County
Deputy Sheriff,

                         Defendants.
_____

APPEARANCES:                            OF COUNSEL:

STOLL, GLICKMAN & BELLINA LLP           LEO GLICKMAN, ESQ.
   Counsel for Plaintiff
475 Atlantic Avenue, Third Floor
Brooklyn, NY 11217

MURPHY BURNS LLP                        THOMAS K. MURPHY, ESQ.
   Counsel for Defendants
407 Albany Shaker Road
Loudonville, NY 12211

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this civil rights action filed by Albert Eldridge ("Plaintiff")

against Columbia County Deputy Sheriffs Jeffrey Hofstetter and Jerald Rowell ("Defendants"),

is Defendants' motion for summary judgment.  (Dkt. No. 17.)  For the reasons set forth below,

Defendants' motion is granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Complaint

Generally, in his Complaint, Plaintiff alleges that, on November 22, 2014, he drove his car to a legal parking spot on State Street in Hudson, New York, and did not move his car at any time that night after parking.  (Dkt. No. 1, at ¶¶ 8-9 [Pl.'s Compl.].)  Plaintiff additionally alleges that, later that evening, he walked from Melino's Pub to his vehicle to get a pack of cigarettes.  (*Id.* at ¶ 12.)  Plaintiff alleges that Defendants then arrested him (and subsequently initiated a criminal proceeding against him) for driving while intoxicated and failing to yield the right-of-way to another vehicle at an intersection.  (*Id.* at ¶¶ 16, 20-21.)  Plaintiff denies driving his vehicle in the hours between when he parked the car and when the arrest occurred.  (*Id.* at ¶ 9.)

Based on these factual allegations, Plaintiff claims that Defendants, acting under color of state law, violated the following rights under 42 U.S.C. § 1983: (1) his right to be free from false arrest under the Fourth Amendment by detaining and imprisoning him without probable cause or reasonable suspicion; and (2) his right to be free from malicious prosecution under the Fourth Amendment by initiating a false accusatory instrument and continuing to maliciously prosecute him by giving false testimony before the grand jury and at the pre-trial hearings and/or criminal trial related to the indictment.  (*Id*. at ¶¶ 25-32.)

### B.    Statement of Undisputed Material Facts

Unless otherwise noted, the following facts were asserted and supported with accurate record citations by Defendants in their Statement of Material Facts and either expressly admitted or denied without appropriate record citations by Plaintiff in his response thereto.  (*Compare* Dkt. No. 17, Attach. 5 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 18, Attach. 1 [Pl.'s Rule 7.1 Resp.].)

1.      On November 22, 2014, Plaintiff was the registered owner of a Chevrolet Malibu bearing New York State registration FXZ9403.

2.      During the afternoon hours of November 22, 2014, Plaintiff drove his vehicle to the area of Melino's Pub on Columbia Street in Hudson, New York.

3.      At approximately 6:00 p.m., Plaintiff entered Melino's Pub on Columbia Street. Between 6:00 p.m. and 11:00 p.m. on November 22, 2014, Plaintiff consumed approximately fifteen (15) bottles of beer and three (3) shots of Jack Daniels alcohol.

4.      At approximately 11:00 p.m. on November 22, 2014, Plaintiff left Melino's Pub to go to his car.

5.      When Plaintiff left the bar to go to his car, he was unable to legally operate a motor vehicle due to his consumption of alcohol.

6.      Plaintiff claims that he retrieved his cigarettes and was returning from his car to the bar when he was approached and stopped by Defendants.

7.      Defendants claim they observed Plaintiff driving his vehicle on Columbia Street near Melino's Pub.[1]

8.      Defendants claim that, while driving his vehicle, Plaintiff cut off a vehicle that was immediately in front of Defendants' vehicle.

---

[1]      While Defendants state in their Local Rule 7.1 Statement of Material Facts that they claim Plaintiff was driving at the intersection of Columbia and State Streets, the record evidence they cite (Dkt. No. 17, Attach. 6, at ¶¶ 3-4 [Hofstetter Aff.]; Dkt. No. 17, Attach. 7, at ¶¶ 3-4 [Rowell Aff.]) does not indicate the specific intersection at which Plaintiff allegedly failed to yield the right of way.  Some pages in Defendants' Exhibit A also do not indicate the intersection at issue, while other pages in the same exhibit indicate the intersection at issue was Columbia Street and Green Street.  (Dkt. No. 17, Attach. 2, at 2, 4, 7, 10, 11.)  Lastly, the Complaint indicates the intersection at issue was Columbia Street, State Street, and Green Street. (Dkt. No. 1, at ¶ 8 [Pl.'s Compl.].)

9.      Defendants claim that Plaintiff then parked his vehicle, jumped out of it, and, when approached by Defendants, initially denied driving his vehicle.[2]

10.     Defendants claim that, when they asked Plaintiff if he had been drinking, he responded, "I had a thousand beers."

11.     Defendants claim that Plaintiff told them, "I only drove from a non-parking spot to this spot so I didn't get a ticket."

12.     Plaintiff denies that he admitted to Defendants that he drove his vehicle.

13.     The area where the arrest occurred was well lighted.[3]

14.     Plaintiff had no prior history of any involvement or problems with either Defendant.

15.     Plaintiff refused Defendants' request that he perform a field sobriety test at the scene of the arrest.

16.     Plaintiff was arrested by Defendants and transported to the Columbia County Sheriff's Office.

17.     At the Columbia County Sheriff's Office, Plaintiff refused numerous requests to take a breath test.

---

[2]      The location that Defendants claim that Plaintiff parked the vehicle is unclear. Defendants' Exhibit A indicates he parked the vehicle on Columbia Street near Green Street. (Dkt. No. 17, Attach. 2, at 7.)  Defendants' Exhibit B and Plaintiff's Exhibit A indicate that Plaintiff parked the vehicle on State Street.  (Dkt. No. 17, Attach. 3, at 72 [Eldridge Dep.]; Dkt. No. 18, Attach. 2, at 6:10-11 [Briggs Test.].)  Lastly, Plaintiff's Exhibit B indicates that Plaintiff parked the vehicle on the corner of Green Street and State Street.  (Dkt. No. 18, Attach. 3, at 8:17-22 [Drabick Test.].)

[3]      Plaintiff claims the arrest occurred where the vehicle was parked on State Street (Dkt. No. 17, Attach. 3, at 72 [Pl.'s Dep.]), while Defendants claim the arrest occurred on Columbia Street (Dkt. No. 17, Attach. 2, at 4.).

4

18.     Plaintiff was charged with violating N.Y. Veh. & Traf. L. § 1192-3 for Driving While Intoxicated (misdemeanor), and N.Y. Veh. & Traf. L. § 1140(a) for Failure to Yield Right of Way at Intersection.

19.     While processing Plaintiff on the night of the arrest, Defendants were unable to access Plaintiff's criminal history through the Department's computer system.  As a result, they were unaware that Plaintiff had a prior DWI conviction from 2011.[4]

20.     Defendants were later notified by the Columbia County District Attorney's Office of Plaintiff's prior conviction and were directed to file a felony DWI complaint in place of the misdemeanor DWI charge.[5]

21.     After processing at the Columbia County Sheriff's Office, Plaintiff was transported to Hudson City Court where he was arraigned and released on his own recognizance.

22.     After being released, Defendants provided Plaintiff a courtesy ride to his residence in Hudson, New York.

23.     After arriving at his home, Plaintiff called a friend who picked him up at approximately 12:30 a.m., and they went to a local bar where Plaintiff continued drinking alcohol until the bar closed at approximately 4:30 a.m.

---

[4]     Although Plaintiff denies this fact because he lacks knowledge of it, such a denial is ineffective.  *See Davis v. City of Syracuse*, 12-CV-0276, 2015 WL 1413362, at *2 (N.D.N.Y. Mar. 27, 2015) (Suddaby, J.) ("On a motion for summary judgment, denials of fact that are based on a lack of personal knowledge, mere information or belief, and/or inadmissible evidence are insufficient to create a genuine dispute."); *In re Horowitz*, 14-CV-36884, 2016 WL 1039581, at *1 n.2 (Bankr. S.D.N.Y. Mar. 15, 2016) (stating that "[o]n a motion for summary judgment, denials based on a lack of knowledge or information sufficient to form a belief are insufficient to contest a disputed fact . . . . Similarly, a response contending to neither admit or deny an allegation does not create a genuine issue of fact").

[5]     Again, it is ineffective for a non-movant to respond that he lacks knowledge of, or information regarding, a fact asserted by the movant.  *See*, *supra*, note 5 of this Decision and Order.

24.    In or about July 2015, a Columbia County Grand Jury returned an indictment accusing Plaintiff of the crime of operating a motor vehicle while under the influence of alcohol, a Class E felony.

25.    Defendant Deputy Hofstetter testified at the Grand Jury proceeding.

26.    Defendant Deputy Rowell did not testify at the Grand Jury proceeding.

27.    During the course of the prosecution, Plaintiff was offered a plea deal by the Columbia County District Attorney's Office of five (5) years felony probation.  If Plaintiff accepted the plea deal, he would also have lost his license for twelve (12) years.

28.    Plaintiff's criminal prosecution went to trial and he was acquitted in or about March of 2016.

29.    Plaintiff testified at the criminal trial and denied driving his vehicle.

30.    Two witnesses testified at the criminal trial that they did not see Plaintiff drive his vehicle prior to his arrest.

31.    Neither Plaintiff nor the two witnesses testified at the Grand Jury proceeding.

32.    Plaintiff claims that Defendant Deputy Hofstetter testified falsely at the Grand Jury proceeding when he stated that Plaintiff drove his vehicle on the night of the arrest.

33.    Plaintiff claims that Defendant Deputy Hofstetter testified falsely at the criminal trial when he stated that Plaintiff drove his vehicle on the night of the arrest.

34.    Plaintiff claims that Defendant Deputy Rowell testified falsely at the criminal trial when he stated that Plaintiff drove his vehicle on the night of the arrest.

35.    In his Grand Jury testimony, Defendant Deputy Hofstetter incorrectly identified the name of the street where the stop of Plaintiff occurred.  Prior to the trial, Deputy Hofstetter

realized his mistake, and, at trial, he testified as to the correct name of the street where the stop of Plaintiff occurred.

### C.    Defendants' Motion for Summary Judgment

#### 1.    Defendants' Memorandum of Law

Generally, in support of their motion for summary judgment, Defendants assert the following three arguments: (1) Plaintiff's malicious prosecution claim should be dismissed as a matter of law because he has failed to adduce sufficient facts (aside from conclusory allegations indicating that Deputy Hofstetter gave "perjured" testimony at grand jury) to rebut the presumption of probable cause created by Plaintiff's indictment; (2) Plaintiff's false arrest claim should be dismissed as a matter of law because his warrantless arrest was privileged, in that it was supported by probable cause based on Defendants' claims that they observed Plaintiff operating a motor vehicle, that he appeared to be intoxicated, and that he subsequently admitted to being intoxicated; and (3) even if Plaintiff's warrantless arrest was not supported by probable cause, Defendants are shielded from liability by the doctrine of qualified immunity as a matter of law because it was objectively reasonable for them to believe there was probable cause to arrest Plaintiff based on his conduct and admissions.  (Dkt. No. 17, Attach. 8, 5-11 [Defs.' Mem. of Law].)

#### 2.    Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendants' motion for summary judgment, Plaintiff makes the following three arguments: (1) if Plaintiff's version of the events are taken as true (including his deposition testimony and the testimony of two witnesses indicating that Plaintiff did not drive his car at the time in question), the only reasonable conclusion would be that Defendant

Hofstetter gave perjured testimony at the grand jury, thereby defeating the presumption of probable cause created by the grand jury indictment; (2) whether there was probable cause to arrest Plaintiff is a disputed issue of fact because he and two witnesses testified that he was not driving the vehicle contrary to Defendants' allegations that he was; and (3) Defendants are not entitled to qualified immunity at this stage because there is a genuine dispute of material fact as to whether "arguable" probable cause to arrest Plaintiff existed, given the dispute as to whether Plaintiff was driving his car at the time in question.  (Dkt. No. 18, at 6-13 [Pl.'s Opp'n Mem. of Law].)

### 3.    Defendants' Reply Memorandum of Law

Generally, in their reply, Defendants argue that Plaintiff's claims of false arrest and malicious prosecution should be dismissed because he has failed to rebut the presumption of probable cause created by the grand jury indictment in that he has failed to provide admissible evidence that Deputy Hofstetter committed perjury at the grand jury.  (Dkt. No. 19, at 4-7 [Defs.' Reply Mem. of Law].)  Specifically, Defendants argue that Plaintiff's argument fails because it merges two elements of the malicious prosecution claim, seeking to use Plaintiff's acquittal to prove that Defendants lacked probable cause to effectuate the arrest, instead of providing admissible evidence sufficient to rebut the presumption of probable cause.  (*Id.* at 4-5.)

## II.    GOVERNING LEGAL STANDARDS

### A.    Legal Standard Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record]

evidence is such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . .  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant.  *Id.* at 255.  In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact."  *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a), (c), (e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.  Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically."  *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.

**B.    Legal Standard Governing Claims Arising Under 42 U.S.C. § 1983**

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state . . . law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920 [1980] [internal quotations omitted]).  "Section 1983 is not itself a source of substantive rights[,] but merely provides a method for vindicating federal rights elsewhere conferred[.]" *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689 [1979]).  "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Kregler v. City of New York*, 821 F. Supp. 2d 651, 655-656 (S.D.N.Y. 2011) (quoting *Wright v. Smith*, 21 F.3d 496, 501 [2d Cir.1994] [internal quotation marks omitted]).

**1.    Legal Standard Governing a Malicious Prosecution Claim**

To establish that the defendants violated the Fourth Amendment by maliciously prosecuting him, a plaintiff must establish, by a preponderance of the evidence, the following four things: (1) commencement of a criminal proceeding against him; (2) termination of the proceeding in the plaintiff's favor; (3) a lack of probable cause; and (4) institution of the proceedings by the defendants with actual malice.  *See Swartz v. Insogna*, 704 F.3d 105, 111-12

(2d Cir. 2013).  Moreover, because a malicious prosecution claim under § 1983 is grounded in the Fourth Amendment right to be free from unreasonable seizures, a plaintiff must also allege a post-arraignment seizure.  *See Swartz*, 704 F.3d at 112.  The Court of Appeals for the Second Circuit has "consistently held that a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a Fourth Amendment deprivation of liberty."  *Id.* (citations omitted).

### 2.    Legal Standard Governing a False Arrest Claim

"The common law tort of false arrest is a species of false imprisonment."  *Weyant v. Okst*, 101 F.3d 845, 853 (2d. Cir. 1996).  To establish that the defendants violated the Fourth Amendment by falsely arresting him, the plaintiff must establish, by a preponderance of the evidence, each of the following four things: (1) the defendants intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.  *Ahern v. City of Syracuse*, 411 F. Supp. 2d 132, 146 (N.D.N.Y. 2006) (Munson, J.).

Because of the fourth above-described element, "the existence of probable cause to arrest . . . is a complete defense to an action for false arrest."  *Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. 2001).  When an arrest is made without a warrant and probable cause is raised as a defense, the government bears the burden to demonstrate the existence of probable cause. *Wu v. City of New York*, 934 F. Supp. 581, 586 (S.D.N.Y. 1996).

Probable cause to arrest is present when law enforcement officers "have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is

committing a crime." *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999); *see also* N.Y.Crim. Proc. § 140.10(1)(a) (McKinney 2004). In evaluating the probable cause determination, the court "consider[s] the facts available to the officer at the time of the arrest" and the conclusions those facts reasonably support. *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997); *see also* N.Y.Crim. Proc. § 70.10(2) (McKinney 2004). The inquiry is an objective one and the subjective beliefs or motivations of the arresting officer are irrelevant. *Whren v. United States*, 517 U.S. 806 (1996). "In fact, the eventual disposition of the criminal charges is irrelevant to the probable cause determination." *Hahn v. Cty. of Otsego*, 820 F. Supp. 54, 55 (N.D.N.Y. 1993) (Hurd, M.J.). Finally, "a claim for false arrest turns only on whether probable cause existed to arrest a defendant[;] . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006). "Stated differently, when faced with a claim for false arrest," this Court must "focus on the validity of the arrest and not on the validity of each charge." *Jaegly*, 439 F.3d at 154.

### C.    Legal Standard Governing a Qualified Immunity Defense

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendants' alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir. 1986) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 815 [1982]). As a result, a qualified immunity inquiry in a civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was

unlawful in the situation confronted." *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004)

(citations omitted); *accord Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (citations

omitted).

In determining the second issue (i.e., whether it would be clear to a reasonable officer

that his conduct was unlawful in the situation confronted), courts in this circuit consider three

factors:

> (1) whether the right in question was defined with 'reasonable specificity';
> (2) whether the decisional law of the Supreme Court and the applicable
> circuit court support the existence of the right in question; and (3) whether
> under preexisting law a reasonable defendant official would have
> understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted), *cert. denied*, 503 U.S.

962 (1992).[6] "As the third part of the test provides, even where the law is 'clearly established'

and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity

defense also protects an official if it was 'objectively reasonable' for him at the time of the

challenged action to believe his acts were lawful." *Higazy*, 505 F.3d at 169–70 (citations

omitted).[7] This "objective reasonableness" part of the test is met if "officers of reasonable

---

[6]    *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179
F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer*, 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v.
Comptroller of City of New York*, 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d
470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v.
New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

[7]    *See also Anderson v. Creighton*, 483 U.S. 635, 639 (1987) ("[W]hether an official
protected by qualified immunity may be held personally liable for an allegedly unlawful official
action generally turns on the 'objective reasonableness of the action.'") (citation omitted); *Davis
v. Scherer*, 468 U.S. 183 (1984) ("Even defendants who violate [clearly established]
constitutional rights enjoy a qualified immunity that protects them from liability for damages
unless it is further demonstrated that their conduct was unreasonable under the applicable
standard."); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects

competence could disagree on [the legality of defendants' actions]." *Malley v. Briggs*, 475 U.S. 335 (1986).[8]  As the Supreme Court has explained,

> [T]he qualified immunity defense . . .  provides ample protection to all but the plainly incompetent or those who knowingly violate the law . . . .  Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley*, 475 U.S. at 341.[9]

## III.    ANALYSIS

### A.    Whether Plaintiff's Claim of Malicious Prosecution Should Be Dismissed Because Plaintiff Has Failed to Rebut the Presumption of Probable Cause Created by the Grand Jury Indictment

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law, namely that Defendants are entitled to absolute immunity on this claim.  (Dkt. No. 17, Attach. 8, at 5-6 [Defs.' Mem. of Law]; Dkt. No. 19, at 4-7 [Defs.' Reply Mem. of Law].)  To those reasons, the Court adds the following analysis.

---

defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights")

[8]    *Accord Malsh v. Corr. Officer Austin*, 901 F. Supp. 757, 764 (S.D.N.Y. 1995) (citing cases); *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996); *see also Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007) ("An officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest–that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'").

[9]    *See also Hunter v. Bryant*, 502 U.S. 224, 229 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.").

Under New York law, a grand jury indictment "creates a presumption of probable cause that may only be rebutted by evidence that the indictment was procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 83 [1983]).  "The burden of rebutting the presumption of probable cause requires the plaintiff to establish what occurred in the grand jury, and to further establish that those circumstances warrant a finding of misconduct sufficient to erode the 'premise that the Grand Jury acts judicially.'" *Rothstein v. Carriere*, 373 F.3d 275, 284 (2d Cir. 2004).  In order to survive a motion for summary judgment on a malicious prosecution claim involving an indictment, a plaintiff must "submit[] evidence sufficient for a reasonable jury to find that the indictment was procured as a result of police conduct undertaken in bad faith." *Savino*, 331 F.3d at 73.[10]

As can be seen from the Statement of Undisputed Facts above in Part I.B of this Decision and Order, there is a genuine dispute of material fact as to whether Plaintiff drove his car at the time in question.  Specifically, Plaintiff argues that he was not driving the car and he provides transcripts of the testimony of two third-party witnesses as proof that Defendant Hofstetter gave false testimony at the grand jury when he testified that Plaintiff had been driving at the time in question on the night of November 22, 2014.  (Dkt. No. 18 [Pl.'s Opp'n Mem. of Law].)

"[W]here there are competing accounts of events, a plaintiff must offer some other evidence of impropriety, which courts have characterized as a 'plus factor,' to corroborate his

---

[10]      To prove that Officer Hofstetter committed perjury when he testified at grand jury, Plaintiff is required to prove that he knowingly or intentionally gave false testimony before the grand jury.  18 U.S.C. § 1623(a) (requiring knowledge); *cf.* N.Y. Penal Law § 210.15 (McKinney 2018) (requiring intent).

testimony." *McClennon v. New York City*, 13-CV-0128, 2018 WL 2943565, at *19 (E.D.N.Y. June 11, 2018) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 273 [S.D.N.Y. 2010]). "Courts have found 'plus factors' present where, for example, a plaintiff has come forward with documentary evidence or testimony from third parties that tends to support the plaintiff's account." *McClennon*, 2018 WL 2943565, at *19.

In the current case, Plaintiff has submitted more evidence than just his own account of events to rebut the presumption of probable cause created by the indictment. Specifically, as noted above, Plaintiff provided transcripts of the testimony of two witnesses who substantiated Plaintiff's allegation that he did not move or drive his car during the time in question. (Dkt. No. 18, at 8 [Pl.'s Mem. of Law]; Dkt. No. 18, Attach. 2, at 115-17, 122; Dkt. No. 18, Attach. 3, at 6, 9-10.) Such sworn testimony appears to constitute a sufficient "plus factor" to rebut the presumption of probable cause created by the indictment. Based on the testimony of the two different witnesses, and the contradictory testimony of Defendant Hofstetter (which leaves little room for a simple error in observation), a reasonable jury could find (albeit barely, given the witnesses' lack of personal knowledge regarding Defendant Hofstetter's state of mind) that Defendant Hofstetter lied when testifying before the grand jury that Plaintiff had been driving his car on the night in question. The Court notes that, contrary to Defendants' argument that Plaintiff is attempting to erroneously rely on his acquittal as evidence that Defendant Hofstetter perjured himself before the grand jury, Plaintiff's opposition memorandum of law indicates that he instead relied on the testimony from his trial rather than the ultimate outcome of that trial. (Dkt. No. 18, at 8-9 [Pl.'s Opp'n Mem. of Law]; Dkt. No. 19, at 5-6 [Defs.' Reply Mem. of Law].)

However, Defendants also argue that, even if the testimony of the two trial witnesses were found to constitute sufficient evidence to satisfy the "competing testimony plus" standard, Defendant Hofstetter is immune from liability for his grand jury testimony as a matter of law. *See Rehberg v. Paulk*, 132 S.Ct. 1497, 1506 (2012) ("[A] grand jury witness has absolute immunity from any § 1983 claim *based on the witness' testimony*. . . . this rule may not be circumvented by . . . using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution.") (emphasis in original); *Peterson v. Regina*, 935 F. Supp. 2d 628, 643 (S.D.N.Y. 2013) ("Even if Peterson had been able to marshal evidence sufficient to show that Officer Regina lied in the grand jury, he would still fail to make out a claim for malicious prosecution because police officers are entitled to absolute immunity for their testimony before the grand jury.").  However, this immunity does not extend to "'all activity that a witness conducts outside of the grand jury room.'" *Coggins v. Buonora*, 776 F. 3d 108, 112-13 (2d Cir. 2015) (quoting *Rehberg*, 132 S.Ct. at 1507 n.1).  Rather, the Second Circuit has held that, "[w]hen a police officer claims absolute immunity for his grand jury testimony under *Rehberg*, the court should determine whether the plaintiff can make out the elements of his § 1983 claim without resorting to the grand jury testimony." *Coggins*, 776 F.3d at 113.  "If the claim exists independently of the grand jury testimony, it is not 'based on' that testimony, as that term is used in *Rehberg*. . . . Conversely, if the claim requires the grand jury testimony, the defendant enjoys absolute immunity under *Rehberg*." *Id.*

In the Complaint, Plaintiff alleges that "Defendants initiated a false accusatory instrument against plaintiff and continued to maliciously prosecute him by testifying falsely against plaintiff at the Grand Jury, pre-trial hearings and/or criminal trial of plaintiff."  (Dkt. No.

1, at ¶ 31 [Pl.'s Compl.].)  Plaintiff therefore bases the malicious prosecution claim on (a) the

accusatory instrument (i.e., the indictment),[11] and (b) Defendants' testimony against him.  As

noted above in Part I.B., ¶ 25 of this Decision and Order, it is undisputed that Defendant

Hofstetter testified before the grand jury, and that he "observe[d] . . . [P]laintiff operating a

motor vehicle while under the influence of alcohol on November 22, 2014."  (Dkt. No. 17,

Attach. 6, at ¶¶ 11-12 [Hofstetter Aff.].)  Plaintiff specifically notes in his opposition

memorandum of law that he is alleging that Defendant Hofstetter committed perjury before the

grand jury by testifying that he observed Plaintiff driving and cutting off another vehicle.  (Dkt.

No. 18, at 8 [Pl.'s Opp'n Mem. of Law].)

Based on the above, the Court finds that Plaintiff's claim for malicious prosecution is

based on Defendant Hofstetter's grand jury testimony and therefore covered by the doctrine of

absolute immunity.  As noted above, the basis of Plaintiff's claim for malicious prosecution is

the allegedly perjured testimony itself and the indictment, which is based (at least in part) on that

testimony.  Although whether Defendant Hofstetter's testimony was material to the grand jury

decision is not clear from the record before the Court, Plaintiff's own arguments revolve around

a theory that probable cause for the prosecution was lacking because Defendant Hofstetter

allegedly gave perjured testimony.  (Dkt. No. 18, at 6-9 [Pl.'s Opp'n Mem. of Law].)  Because

---

[11]    Plaintiff appears to argue that the charges pursuant to N.Y. Veh. & Traf. L. §
1192-3 and N.Y. Veh. & Traf. L. § 1140-a constitute accusatory instruments related to his
prosecution.  (Dkt. No. 18, at 7-8 [Pl.'s Opp'n Mem. of Law].)  However, Plaintiff does not
allege (nor does he adduce evidence to establish) that he was prosecuted on those charges.
Rather, the record shows that Plaintiff was prosecuted on the charge of Operating a Motor
Vehicle While Under the Influence of Alcohol.  (Dkt. No. 17, Attach. 1, at ¶ 9-13.)  Therefore, it
is the indictment, not the initial traffic charges given by Defendants on November 22, 2014, that
is the relevant accusatory instrument for the purposes of Plaintiff's malicious prosecution claim.

Plaintiff's claim and arguments all rely on discrediting Defendant Hofstetter's testimony to the grand jury, he has not shown that he can make out the elements of a malicious prosecution claim without resorting to that grand jury testimony. Consequently, the Court finds that Plaintiff's claim for malicious prosecution is barred by the doctrine of absolute immunity.

For all of these reasons, the Court grants Defendants' motion for summary judgment on Plaintiff's claim for malicious prosecution.

### B. Whether Plaintiff's Claim for False Arrest Should Be Dismissed Because There Was Probable Cause to Arrest Plaintiff

After carefully considering the matter, the Court answers this question in the negative for reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No. 18, at 10-11 [Pl.'s Opp'n Mem. of Law].) To those reasons, the Court adds the following analysis.

As Plaintiff argues (and as can be seen from the Statement of Undisputed Facts above in Part I.B of this Decision and Order), there is a genuine dispute of material fact as to whether Plaintiff was driving his car on the night of November 22, 2014, with Defendants stating that they observed Plaintiff driving while intoxicated, and Plaintiff and two witnesses stating that he had not driven that night. Because the offenses for which Plaintiff was arrested require that he be operating a motor vehicle, this dispute is central to the question of whether probable cause existed for the arrest. Consequently, this matter cannot be resolved on this motion for summary judgment.

Granted, Defendants argue that "the probable cause that exists by virtue of the indictment which was based on Deputy Hofstetter's sworn testimony equally serves to bar [P]laintiff's claim for false arrest herein." (Dkt. No. 17, Attach. 8 at 4 [Defs.' Mem. of Law].) However,

Defendants' reliance on the grand jury indictment to create a presumption of probable cause is inappropriate. As the Second Circuit recognized, "[t]he New York Court of Appeals has expressly held that the presumption of probable cause arising from an indictment 'applies only in causes of action for malicious prosecution and is totally misplaced when applied to false [arrest] actions.'" *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (quoting *Broughton v. State*, 37 N.Y.2d 451, 456 (1975)); *see also Rivas v. Suffolk Cty.*, No. 04-4813, 2008 WL 45406, at *1 (2d Cir. 2008) (holding "[the] district court erred as a matter of law in holding Rivas's indictment established a presumption of probable cause").

For all of these reasons, the Court denies Defendants' motion for summary judgment on Plaintiff's claim for false arrest/false imprisonment.

### C.      Whether Defendants Are Entitled to Qualified Immunity

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No. 17, at 11-13 [Pl.'s Opp'n Mem. of Law].) The Court would only add one point.

"[An] arresting officer is entitled to qualified immunity as a matter of law if the *undisputed* facts and all permissible inferences favorable to the plaintiff show either (a) that it was objectively reasonable for the officer to believe that probable cause existed, or (b) that officers of reasonable competence could disagree on whether the probable cause test was met." *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987) (emphasis added). "If there is no dispute as to any material fact, the issue of whether the official's conduct was objectively reasonable is an issue of law to be decided by the court." *Dudley v. City of Glens Falls,* 12-CV-0429, 2013 WL 5347291, at *6 (N.D.N.Y. Sep. 23, 2013) (D'Agostino, J.) (citing *Zellner v. Summerlin*, 494 F.3d

344, 368 [2d Cir. 2007]).  However, when unresolved factual issues remain, they must be

resolved by a jury before the Court can make a final determination of whether qualified

immunity attaches as a matter of law.  *Dudley*, 2013 WL 5347291, at *6 (citing *Zellner*, 494 F.3d

at 368).

Here, it is disputed whether Plaintiff was driving and whether he told police he "only

drove from a non-parking spot to this spot so [he] didn't get a ticket."  (*Compare* Dkt. No. 17,

Attach. 5 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 18, Attach. 1 [Plf.'s Rule 7.1 Resp.].)

Consequently, there remains a genuine dispute of material fact as to whether there was arguable

probable cause to arrest Plaintiff that would be more appropriately resolved by a jury.

For all of these reasons, the Court denies Defendants' motion for summary judgment on

the affirmative defense of qualified immunity.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment is **<u>GRANTED</u> in part** and

**<u>DENIED</u> in part** in the following respects:

(1) Plaintiff's claim for malicious prosecution is **<u>DISMISSED</u>**; and

(2) Plaintiff's claim for false arrest **<u>SURVIVES</u>** Defendants' motion; and it is further

**ORDERED** that counsel are directed to appear on **SEPTEMBER 27, 2018 at 11:00 AM**

in Syracuse, NY, in chambers for a pretrial conference, at which time counsel are directed to

appear with settlement authority, and in the event that the case does not settle, trial will be

scheduled at that time.  Plaintiff is further directed to forward a written settlement demand to

Defendants no later than **AUGUST 31, 2018**, and the parties are directed to engage in

meaningful settlement negotiations before the conference.  In the event that counsel feel

settlement is unlikely, counsel may request to participate via telephone conference for the limited

purpose of scheduling a trial date by electronically filing a letter request at least one week before

the scheduled conference.

Dated: August 13, 2018
      Syracuse, New York

                                Hon. Glenn T. Suddaby
                                Chief U.S. District Judge