UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALBERT ELDRIDGE,

                Plaintiff,

v.

JEFFREY HOFSTETTER, Columbia Cty. Deputy
Sheriff; and JERALD ROWELL, Columbia Cty.
Deputy Sheriff,

                Defendants.

1:16-CV-1281
(GTS/CFH)

_____

APPEARANCES:

STOLL, GLICKMAN & BELLINA LLP
  Counsel for Plaintiff
475 Atlantic Avenue, Third Floor
Brooklyn, NY 11217

MURPHY BURNS LLP
  Counsel for Defendants
407 Albany Shaker Road
Loudonville, NY 12211

OF COUNSEL:

LEO GLICKMAN, ESQ.

THOMAS K. MURPHY, ESQ.

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

Currently before the Court, in this civil rights action filed by Albert Eldridge ("Plaintiff") against Columbia County Deputy Sheriffs Jeffrey Hofstetter and Jerald Rowell ("Defendants"), is Plaintiff's motion for reconsideration of the Court's Decision and Order of August 13, 2018. (Dkt. No. 23.) For the reasons set forth below, Plaintiff's motion is granted.

## I. RELEVANT BACKGROUND

### A. The Court's Decision and Order of August 13, 2018

In its Decision and Order of August 13, 2018, the Court dismissed Plaintiff's malicious prosecution claim on the basis that the doctrine of absolute immunity barred that claim. (Dkt. No. 20, at 14-19 [Decision and Order filed Aug. 31, 2018].) More specifically, the Court found that, notwithstanding whether Plaintiff could rebut the presumption of probable cause created by the grand jury indictment, Defendants were protected from liability as a matter of law by the doctrine of absolute immunity because Plaintiff would be unable to prove the elements of his malicious prosecution claim without resorting to Defendant Hofstetter's allegedly perjured grand jury testimony. (*Id.* at 15-19.) As to Plaintiff's remaining false arrest claim and Defendants' defense under the doctrine of qualified immunity, the Court found that there were genuine disputes of material fact that could not be resolved on a motion for summary judgment. (*Id.* at 19-21.)

### B. The Parties' Briefing on Plaintiff's Motion for Reconsideration

#### 1. Plaintiff's Memorandum of Law

Generally, in his motion for reconsideration, Plaintiff asserts two arguments. (Dkt. No. 23, Attach. 2, at 5-9 [Pl.'s Mem. of Law].) First, Plaintiff argues that the Court erred in misconstruing Plaintiff's argument as revolving around a theory that probable cause was lacking as a result of Defendant Hofstetter's allegedly perjured grand jury testimony. (*Id.* at 5-6, 9.) Plaintiff argues that he instead argued that evidence suggesting that Defendant Hofstetter's grand jury testimony was perjury was sufficient to overcome the presumption of probable cause that ordinarily arises as a result of an indictment (and that, even if the presumption were not

overcome, a genuine dispute of material fact would remain regarding whether probable cause existed to commence a criminal proceeding against Plaintiff *before* the indictment). (*Id.*)

Second, Plaintiff argues that the Court erred in (a) stating that he has not been charged and prosecuted pursuant to N.Y. Veh. & Traf. L. § 1192-3, and (b) failing to consider the felony complaint as the initiation of the prosecution against him. (*Id.* at 6-9.) Plaintiff argues that the Court's error in stating the charges resulted in an erroneous reliance on the indictment rather than the initial traffic charges as the relevant accusatory instrument for the purposes of the malicious prosecution claim. (*Id.* at 6-7.) Plaintiff argues also that the felony complaint (prepared on the night of his arrest) charges him with the same crimes contained in the arrest report and traffic tickets and that the Court erred in overlooking the felony complaint when relying on the indictment. (*Id.* at 7.) More specifically, Plaintiff argues that, "[e]ven if it could be argued that the indictment is a superceding accusatory instrument to the arrest report and the tickets, the Felony Complaint would then constitute the initiating accusatory instrument." (*Id.* at 9.)

### 2. Defendants' Opposition Memorandum of Law

Generally, Defendants argue that Plaintiff's motion for reconsideration should be denied. (Dkt. No. 27, at 4-6 [Defs.' Opp'n Mem. of Law].) Defendants argue that the Court correctly found the indictment to be the basis for Plaintiff's malicious prosecution claim because the indictment described the charge for which Plaintiff was actually prosecuted. (*Id.* at 4-5.) Defendants also dispute Plaintiff's argument that the felony complaint was prepared the same night as the arrest, noting that Plaintiff was deemed to have admitted that the felony complaint was not filed until after Defendant Rowell contacted the District Attorney's office. (*Id.* at 5.)

Defendants additionally argue that it is Plaintiff's acquittal of the charge in the indictment that he relies on to support his claim, further supporting the Court's finding that the indictment was the relevant accusatory instrument. (*Id.* at 5-6.)

## II. LEGAL STANDARDS GOVERNING A MOTION FOR RECONSIDERATION

Motions for reconsideration proceed in the Northen District of New York under Local Rule 7.1(g). A court may justifiably reconsider its previous ruling under three circumstances: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice. *Delaney v. Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 [2d Cir. 1983]). The standard for granting a motion for reconsideration is strict. *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.[1] Thus, a motion for reconsideration is not to be used for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

## III. ANALYSIS

As an initial matter, the Court notes that Plaintiff's first argument is without merit. Despite a single (brevity-intended but perhaps poorly-worded) sentence in its Decision and Order of August 13, 2018, the Court clearly indicated that it understood that Plaintiff was

---

[1] Generally, motions for reconsideration are not granted unless "the moving party can point to controlling decisions or data that the court overlooked–matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader*, 70 F.3d at 257.

4

arguing that the evidence that he provided rebutted the presumption of probable cause (not that probable cause was entirely lacking), and conducted its analysis based on that understanding. For example, the heading for the section discussing that issue is titled "Whether Plaintiff's Claim of Malicious Prosecution Should Be Dismissed Because Plaintiff Has Failed to Rebut the Presumption of Probable Cause Created by the Grand Jury Indictment"; the Court discussed the legal standards related to rebutting the presumption of probable cause; and the Court acknowledged that Plaintiff had provided "more evidence than just his own account of events to rebut the presumption of probable cause." (Dkt. No. 20, at 14-15 [Decision and Order filed Aug. 31, 2018].) In any event, the misstatement had no impact on the Court's overall conclusion; the Court did not even make a concrete finding as to whether Plaintiff rebutted the presumption of probable cause because it found that Defendant Hofstetter was nonetheless entitled to absolute immunity. (*Id*. at 17-18.) Notably, Plaintiff does not cite any legal authority for the point of law that absolute immunity would not apply if he had rebutted the presumption of probable cause. The Court therefore finds that Plaintiff's first argument is immaterial and does not constitute grounds for reconsideration.

As to Plaintiff's second argument, the Court first notes that, in response to Plaintiff's assertion that the Court erroneously failed to consider the proper charge for which Plaintiff was prosecuted, the Court finds that the footnote Plaintiff cites, again, is simply a minor misstatement. As Defendants gleaned, that footnote was clearly intended to convey that Plaintiff was initially charged on arrest with a *misdemeanor* DWI offense and failure-to-yield charge, whereas he was ultimately indicted and prosecuted for a *felony* DWI charge. (Dkt. No. 20, at 18 n.11 [Decision and Order filed Aug. 13, 2018].) The Court was and is fully aware of the charges

5

in this matter and this misstatement and/or lack of clarity in a footnote of its Decision and Order had no bearing on the Court's findings.

More persuasive is Plaintiff's argument that he is entitled to reconsideration because the Court "overlooked" the felony complaint when determining that the grand jury indictment was the relevant accusatory instrument and that this oversight resulted in a clear error of law. (Dkt. No. 23, Attach. 2, at 8-9 [Pl.'s Mem. of Law].) The Court agrees with Plaintiff that the arrest report and felony complaint should have been considered as initiating documents or acts in continuance of the prosecution for the purpose of determining whether the Defendants initiated the prosecution notwithstanding the fact that those initiating documents were later superceded by an indictment. *See Nickey v. City of New York*, 11-CV-3207, 2013 WL 5447510, at *7-8 (E.D.N.Y. Sept. 27, 2013) (finding that the malicious prosecution claim against arresting officers centered on whether probable cause was available at the time one officer initiated proceedings by way of a felony complaint, because [1] the felony complaint was an initiatory instrument under New York law, [2] his claim could not be based on conduct occurring during or after the proceedings before the grand jury.); *Sankar v. City of New York*, 07-CV-4726, 2012 WL 2923236, at *3 (E.D.N.Y. July 18, 2012) ("*Rehberg* does not alter controlling Second Circuit [and New York] law that an officer's filing of a sworn complaint is sufficient to satisfy the initiation prong of a malicious prosecution claim. Ostrowski's testifying at the grand jury was but one additional step this officer took in his effort to push the case against plaintiff forward.").

These documents sufficiently establish, for the purposes of Defendants' motion for summary judgment, that both Defendants were involved in initiating or continuing the prosecution against Plaintiff: Defendant Hofstetter is listed as the arresting officer and signed the

arrest report,[2] and Defendant Rowell signed both the initial misdemeanor complaint and the subsequent felony complaint. (Dkt. No. 17, Attach. 2, at 3-5, 12.) *See also Tretola v. D'Amico*, 13-CV-5705, 2014 WL 2957523, at *7 (E.D.N.Y. July 1, 2014) ("'In malicious prosecution cases against police officers, plaintiffs have met this first element by showing that officers brought formal charges and had the person arraigned, or filled out complaining or corroborating affidavits, or swore to and signed a felony complaint.'") (quoting *Llerando-Phipps v. City of N.Y.*, 390 F. Supp. 2d 372, 382-83 [S.D.N.Y. 2005]); *Phillips v. DeAngelis*, 571 F. Supp. 2d 347, 354 (N.D.N.Y. 2008) (Hurd, J.) (finding initiation of prosecution where defendant Zell filed the criminal complaint and defendant Leonard continued the criminal proceedings by locating and arresting him). Because these documents appear to suffice to establish that both Defendants initiated the prosecution against Plaintiff, there was no need to consider whether absolute immunity applies to Defendant Hofstetter's grand jury testimony. The Court therefore vacates

---

[2] Granted, Plaintiff's sole evidence that Defendant Hofstetter initiated a pre-indictment accusatory instrument against him appears to be the fact that Defendant Hofstetter signed an arrest report the day *after* Defendant Rowell issued a felony complaint against Plaintiff. (Dkt. No. 17, Attach. 2, at 4 [Arrest Report, stating that the "Date Written" by Defendant Hofstetter as "11/23/2014"]; Dkt. No. 17, Attach. 2, at 12 [Felony Complaint, affirmed by Defendant Rowell on Nov. 22, 2014].) This is significant because, if Defendant Rowell's felony complaint by itself deprived Plaintiff of a liberty interest, it is unclear to the Court how Defendant Hofstetter's arrest report could rationally be found to have deprived Plaintiff of a liberty interest. *See, e.g., Walker v. Sankhi*, 494 F. App'x 140, 143 (2d Cir. 2012) ("Walker could not have suffered a deprivation of liberty as a result of the Bellamy burglary charge because, throughout the pendency of that charge, he was already in custody, and remained in custody, for a completely separate burglary charge, of which he was ultimately convicted."). It is important to remember that showing such a deprivation is necessary to establish a malicious prosecution claim against Defendant Hofstetter. *See Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995) ("A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must . . . show some deprivation of liberty consistent with the concept of 'seizure.'"). <u>However, because the parties have not briefed this issue, the Court finds it inappropriate to dismiss Plaintiff's malicious-prosecution claim against Defendant Hofstetter based on this ground at this time.</u>

7

its finding that Defendant Hofstetter was entitled to absolute immunity regarding the malicious prosecution claim (insofar as that claim is based on conduct occurring prior to the grand jury proceedings) and reinstates that claim based on the genuine dispute of material fact as to whether probable cause was present to initiate and/or maintain that prosecution.[3]

Having said that, the Court finds it necessary to advise the parties of a thorny issue that the Court has discovered during its careful re-review of the record in this action regarding Plaintiff's false arrest claim. Based on Plaintiff's own version of events, the following facts appear to be true: (1) Melino's Pub was located on Columbia Street, which runs in an east-west direction; (2) in front of Melino's Pub, State Street meets Columbia Street in such a way that, if one were to drive west on Columbia Street, one could "veer" to the right onto State Street (i.e., State Street runs into Columbia Street from a northwesterly direction, forming part of a "triang[le]"); (3) at about 5:30 p.m. on the evening in question, Plaintiff drove west on Columbia Street, "veer[ed]" right onto State Street, and immediately parked on the right side of State Street on the far side of the "triangle" (so that the driver's side of his vehicle was closer to the front entrance of Melino's than was the passenger side); (4) at approximately 11:00 p.m., he walked "straight" from Melino's Pub to his vehicle (crossing both Columbia Street and State Street); (5) when he was walking along this "straight" route, no vehicles passed that would have required him to "stop walking to let a car go by"; and (6) after he retrieved his cigarettes from his vehicle, he attempted to return to Melino's Pub along a similar route, encountering a sheriff's vehicle

---

[3] As the Court noted in the Decision and Order of August 13, 2018, in relation to the false arrest claim, there is a genuine issue of material fact as to whether there was probable cause to arrest based on conflicting testimony as to whether Plaintiff was driving his vehicle at the time in question. The Court finds that those same questions pervade the probable cause analysis related to the malicious prosecution claim, as the charge against Plaintiff necessarily required that Plaintiff had been driving in order to be sustainable.

turning onto State Street from Columbia Street while he was "in the middle of . . . State Street." (Dkt. No. 17, Attach. 3, at 44, 54-58, 64-65, 73-75, 79-80, 82-84 [Pl.'s Dep.]; Dkt. No. 17, Attach. 4, at A.6. [Pl.'s Interrogatory Responses]; Dkt. No. 18, Attach. 2, at 6-8 [attaching pages "114" to "116" of Briggs' Trial Testimony.]; Dkt. No. 18, Attach. 3, at 4, 7, 9-11 [attaching pages "98," "101," "103" to "105" of Drabick's Trial Testimony.].)

As a result, it appears that, based on Plaintiff's own version of events, the area in which he was standing at the moment he first encountered the sheriff's vehicle was not within a designated crosswalk. (Dkt. No. 17, Attach. 3, at 74 [Pl.'s Dep., responding, "I don't think so" to the question "You don't recall having to stop walking to let a car go by or anything of that kind?" as he was walking to his car]; Dkt. No. 17, Attach. 3, at 84 [Pl.'s Dep., stating, "My car was behind me, ten or 15 [feet]. That would put me in the middle of the *street* at–on State Street."] [emphasis added]; Dkt. No. 18, Attach. 2, at 7-8 [attaching pages "115" and "116" of Briggs' Trial Testimony, stating that Plaintiff had to cross two streets to get from Melino's Pub to his vehicle, and that he was "on his way back towards the bar" when the sheriff's vehicle pulled up]; Dkt. No. 18, Attach. 3, at 9-11 [attaching pages "103" to "105" of Drabick's Trial Testimony, stating that Plaintiff came directly back toward Melino's Pub and was "in the middle of the street" when the sheriff's vehicle pulled up].)

If this is the case, then, based on Plaintiff's own version of events, it appears that, at the moment he first encountered the sheriff's vehicle, he may have been violating the New York Vehicle and Traffic Law, for which Defendants could have had probable cause to arrest him. *See* N.Y. Veh. & Traf. L. § 1156(a) ("Every pedestrian crossing a roadway at any point other than within a marked crosswalk . . . shall yield the right of way to all vehicles upon the

9

roadway.");[4]

N.Y. Veh. & Traf. L. § 1152(c) ("No pedestrian shall cross a roadway intersection diagonally unless authorized by official traffic-control devices.");[5] N.Y. Veh. & Traf. L. § 1156(a) ("Where sidewalks are provided and they may be used with safety it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway.").[6]

In response to an argument that the two offenses listed above permitted merely the issuance of an appearance ticket under New York State law, even if true, the Court notes that such a fact would be immaterial for purposes of a Fourth Amendment claim. This is because the fact that a police officer has violated a New York State statute does not mean that his arrest lacked probable cause under the Fourth Amendment. *See Auricchio v. Town of DeWitt*, 10-CV-1072, 2013 WL 868261, at *15 & n.89 (N.D.N.Y. March 7, 2013) (Suddaby, J.) ("Even if Defendants were able under the noise ordinance to only issue Plaintiff an appearance ticket

---

[4] Because Plaintiff admits that Defendants' patrol vehicle stopped as it approached him while he was in the middle of State Street, it appears that it was Defendants, not he, who "yielded." (Dkt. No. 17, Attach. 3, at 83-84 [Pl.'s Dep.].)

[5] Because Plaintiff admits he was on State Street where it intersects Columbia Street at an angle, and that he was headed directly back to Melino's (which would have taken him across both State Street and Columbia Street), it appears he may have been crossing, or attempting to cross, an intersection diagonally. (Dkt. No. 17, Attach. 3, at 54-57, 73, 75, 79-80 [Pl.'s Dep.].)

[6] At least two cases exist suggesting that the "along and upon" requirement in this statute may be satisfied when a pedestrian is walking "in" a roadway that is adjacent to a sidewalk. *See New York v. Binet*, 147 A.D.3d 1390, 1390-91 (N.Y. App. Div., 4th Dep't 2017) ("We conclude that the officers were authorized to stop defendant, who was walking *in the street*, based upon their observation of his violation of Vehicle and Traffic Law § 1156(a) . . . .") (emphasis added); *New York v. Winsor*, 53 Misc.3d 1159, 1162-63 (N.Y. Crim. Ct., N.Y. City, 2016) ("The allegations that defendant was observed walking in the roadway during rush-hour next to a safe sidewalk and did not leave the road when instructed by police, provide reasonable cause to believe defendant intentionally violated Vehicle and Traffic Law § 1156[a].") (emphasis added).

(rather than arrest him), that fact would not give rise to a Fourth Amendment claim under 42 U.S.C. § 1983.") (collecting cases), *aff'd*, 552 F. App'x 95 (2d Cir. 2014); *Danford v. City of Syracuse*, 09-CV-0307, 2012 WL 4006240, at *10 (N.D.N.Y. Sept. 12, 2012) (Suddaby, J.) ("[W]hether or not Defendants were authorized under New York State statute . . . to only issue Plaintiff an appearance ticket for violating the City Noise Ordinance (rather than arresting him for that violation) is largely, if not entirely, irrelevant for purposes of a claim under 42 U.S.C. § 1983 and the Fourth Amendment."); *Picciano v. McLoughlin*, 723 F. Supp.3d 491, 503 (N.D.N.Y. 2010) (Suddaby, J.) ("The fact that a police officer has violated . . . some New York State [s]tatute . . . does not mean that his arrest lacked probable cause under the Fourth Amendment."). Also weighing in favor of a finding that Defendants would have been justified in arresting Plaintiff rather than simply giving him an appearance ticket is the admitted fact that Plaintiff was visibly intoxicated when he encountered Defendants. (*See, e.g.,* Dkt. No. 17, Attach. 3, at 75 [Plf.'s Depo. Tr., stating, "[H]e could have given me a public intoxication, not a DWI"].)[7]

In response to an argument that Defendants did not in fact arrest Plaintiff for one or both of the two above-listed offenses, the Court notes that, of course, it does not matter that the stated reason for the arrest was something other than violating N.Y. Veh. & Traf. L. § 1152(a), N.Y. Veh. & Traf. L. § 1152(c) and/or N.Y. Veh. & Traf. L. § 1156(a) . *See Devenpeck v. Alford*, 543 U.S. 146, 153-55 (2004) (explaining that probable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect for any criminal offense, regardless of

---

[7] The Court notes that it does not find that Defendants had probable cause to arrest Plaintiff for public intoxication because the Court can find no grounds to conclude that public intoxication was proscribed in the City of Hudson during the time in question.

their stated reason for the arrest); *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) ("[A] claim for false arrest turns only on whether probable cause existed to arrest a defendant[;] . . . it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest.").

In response to an argument that the Court could not dismiss Plaintiff's false arrest claim "based on his own version of events" because various portions of those events are contradicted by evidence adduced by *Defendants* (thus creating a genuine dispute of material fact on the relevant issue), the Court notes that a nonmovant wishing to avoid summary judgment may not "pick and choose from other witnesses' essentially incompatible accounts (in effect, declining to credit some of the nonmovant's own testimony)" in order to "string together those portions of the record to form the story that . . . is most helpful to the nonmovant." *Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) (explaining that "[o]ur duty to read the record in the nonmovant's favor stops short of not crediting the nonmovant's testimony in whole or part; the courts owe a nonmovant no duty to disbelieve his sworn testimony which he chooses to submit for use in the case to be decided); *accord, Krynski v. Chase*, 707 F. Supp.2d 318, 327, n.7 (E.D.N.Y. 2009) ("Accordingly, this Court need only consider Chase's version of the accident for summary judgment purposes, notwithstanding the fact that it conflicts with his adversary's account."); *Berk v. St. Vincent's Hosp. and Med. Ctr.*, 380 F. Supp.2d 334, 346 (S.D.N.Y. 2005) ("The Court will discharge its duty on summary judgment by . . . disregarding Defendants' evidence indicating that Berk received proper medical service when he complained to Feldman's office of pain and swelling . . . [and] credit[ing] Berk's own sworn deposition testimony setting forth his version of events . . . .").

12

Having said all of that, the Court finds that, based on Plaintiff's own version of events, four genuine disputes of material fact appear to exist at this time impacting whether the Court could conclude, as a matter of law, that probable cause existed to believe Plaintiff was committing one or more of the three above-described offenses: (1) whether Plaintiff was not within a marked crosswalk at the moment he first encountered the sheriff's vehicle; (2) whether Plaintiff failed to yield the right of way to Defendants; (3) whether, at the moment Plaintiff first encountered the sheriff's vehicle, he was crossing an intersection diagonally; and (4) whether the adjacent sidewalk may have been used by Plaintiff with safety. As a result, the Court finds that judgment as a matter of law for Defendants on Plaintiff's false arrest claim does not appear appropriate at this time, although the Court expresses no opinion as to whether such a judgment would be appropriate based on the trial testimony in this case.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for reconsideration (Dkt. No. 23) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's claim for malicious prosecution is hereby reinstated for the purposes of trial; and it is further

**ORDERED** that counsel are directed to appear on **DECEMBER 19, 2018** at 11:00 a.m. in chambers for a pretrial conference, at which counsel are directed to appear with settlement authority, and in the event that the case does not settle, trial will be scheduled at that time. Plaintiff is further directed to forward a written settlement demand to defendants no later than NOVEMBER 26, 2018, and the parties are directed to engage in meaningful settlement negotiations prior to the conference. In the event that counsel feel settlement is unlikely,

13

counsel may request to participate via telephone conference for the limited purpose of scheduling a trial date by electronically filing a letter request at least one week prior to the scheduled conference.

Dated: November 14, 2018
      Syracuse, New York

                                        Hon. Glenn T. Suddaby
                                        Chief U.S. District Judge